IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

JULIUS WILLIAMS,

     PLAINTIFF                             09 Civ 9044/RWS/HBP
                                           PLAINTIFF'S COMPLAINT
     vs                                [JURY TRIAL]

THE CITY OF NEW YORK, a municipal
entity, JOSEPH GARCIA, Director of
Police Operations of the New York
City Department of Homeless Services,
individually and in his official
capacity, MICHAEL GAGLIARDI, Assistant
Commissioner of Security of the
New York City Department of
Homeless Services, individually
and in his official capacity, GLENN
PANAZZOLO, Deputy Commissioner of the
New York City Department of Homeless
Services, individually and in his official
capacity, ROBERT HESS, Commissioner of
the New York City Department of Homeless
Services, individually and in his official
capacity,

     DEFENDANTS

_____

## I.   INTRODUCTION

1.   This is an action by the Plaintiff against the Defendant parties, individually and collectively, for the violation of his constitutional and civil rights as guaranteed under the laws and Constitution of the United States and the laws and Constitution of the State of New York.

2.   The Plaintiff claims that he was discriminated against,

based on his race as an African American, in the terms and
conditions of his employment by the City of New York as a law
enforcement officer working for the City of New York within the
New York City Department of Homeless Services.  He further claims
that he was subjected to retaliatory treatment because of his
prior litigation against the Defendant parties related to the
terms and conditions of his employment by the City of New York in
the New York City Department of Homeless Services.

 3.  The Plaintiff, an African American citizen and resident
of the State of New York, the City of New York, and the County of
the Bronx.

 4.  The Plaintiff specifically claims that he suffered
racially discriminatory and retaliatory treatment in the
imposition of disproportionate discipline by the Defendant
parties, for unjustified assessments of  his work performance by
the Defendant parties, when and where comparable situated
individuals of Latino national origin, for work performance
offenses more substantial in nature and with evidence for support
of such [unlike the Plaintiff's situation where the evidence of
any work performance offense on the part of the Plaintiff was
lacking], have suffered much less severe disciplinary sanctions
and adverse consequences if any sanctions or adverse consequences
at all.

 5.  The Plaintiff seeks injunctive relief and other equitable
and monetary relief including reinstatement into and/or promotion

back to the positions from which he was demoted; back pay [the differential between that salary which he received in the positions from which he was demoted to his present position]; restoration of other appropriate benefits which he lost as a consequence of the demotions which he suffered through the racially discriminatory and retaliatory discipline and sanctions which he suffered; and, in addition, damages for the emotional distress, mental anguish, and psychological trauma which he has suffered because of the treatment to which he was subjected in this regard and respect.

## II. JURISDICTION

6.  Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343 [3] and [4] in conjunction with the Civil Rights Acts of 1866 and 1871, 42 U.S.C. Sections 1981 [as amended] and 1983, Title VII of the Civil rights Act of 1964 [as amended], 42 U.S.C. Sections 2001, et seq., and the Thirteenth and Fourteenth Amendments to the United States Constitution.

7.  The Plaintiff filed a Complaint with the United States Equal Employment Opportunity Commission on March 19, 2009 about the matters addressed and encompassed in the within Complaint.

8.  On September 14, 2009 the United States Department of Justice, Civil Rights Division issued a "Notice of Right to Sue within 90 Days" letter to the Plaintiff pursuant to the Civil Rights Act of 1964 as amended, 42 U.S.C. Section 2000[e], et seq..

9.   The Plaintiff received the said "Notice of Right to Sue Within 90 Days" letter shortly after the September 14, 2009 date of said letter.  A copy of the letter is attached hereto and made part hereof.

10.  This litigation is instituted within the 90 day period of receipt of said letter by the Plaintiff.

11.  Jurisdiction of this Court is also invoked pursuant to and under 28 U.S.C. Section 1367, entitled Supplemental Pendent Party/Pendent Claim Jurisdiction. The Plaintiff requests that the Court exercise its powers to invoke pendent claim and pendent party jurisdiction.

12.  The State law claims have a common nucleus of operative fact with the federally based claims and they arise out of the same transactions and occurrences which rise to the Plaintiff's federally based claims and causes of action.

13.  The Plaintiff also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et seq., this being an action in which the Plaintiff, while seeking monetary damages, also seeks declaratory and injunctive and other equitable relief in order to provide the Plaintiff with a full and complete remedy for the violation of his civil and constitutional rights including the restoration of the Plaintiff to the position and rank of Lieutenant, from which he claims he was discriminatorily and retaliatorily demoted, and including the awarding of monies which he lost in salary as a

consequence of his demotion and including the restoration of rights and benefits associated with the Plaintiff's employment and the restoration of the Plaintiff to the position and rank of Lieutenant.

14.  This is an action in which the Plaintiff seeks relief for the violation of his rights as guaranteed under the laws and Constitution of the United States and the laws and Constitution of the State of New York.

### III. PARTIES

15.  The Plaintiff is an African American citizen and resident of the City of New York, County of the Bronx, State of New York.

16.  The Defendant City of New York is a municipal entity which was created pursuant to and under the laws and Constitution of the State of New York and which, consistent with the laws and Constitution of the State of New York, operates an agency known as the Department of Homeless Services that is designed to provide housing and social services to individuals who, because of a variety of factors in their respective lives, have been defined as "homeless" individuals and who, because of such, are deemed to need special services, housing and otherwise, in order to navigate the conditions of their respective lives and the world, generally.

17.  Defendants Joseph Garcia, Director of Police Operations, Michael Gagliardi, Assistant Commissioner of Security for the New York City Department of Homeless Services, Glenn Panazzolo, Deputy Commissioner of the New York City Department of Homeless Services,

and Robert Hess, Commissioner of the New York City Department of Homeless Services, are employees and agents of the City of New York. They are sued in their individual and official capacities. Each of the individual is a white male or a white Hispanic male.

18.   They are the individuals responsible for the hiring and promotion and disciplinary policies and practices and customs within the security and police operations units and divisions of the New York City Department of Homeless Services generally, and specifically as they relate to the Plaintiff and other individuals employed within the force or Police Department as it is known which the New York City Department of Homeless Services utilizes to provide security at the facilities which it maintains and operates for the purposes of providing shelter and associated services inter-related thereto for and to the New York City homeless population.

19.   Although their actions and conduct hereinafter described were wrongful and unlawful and otherwise unconstitutional, their actions and conduct were taken by the named Defendants, individually and collectively, in the course of the named Defendants' respective duties and functions as agents and employees of the City of New York and incidental to the otherwise lawful performance of their duties and functions as agents and employees of the City of New York.

### III. ALLEGATIONS

20.   The Plaintiff, Julius Williams, is forty eight [48] years

of age.

21.   The Plaintiff's birth date is October 7, 1961.

22.   The Plaintiff is an African American citizen and resident of the State of New York, the City of New York, the County of the Bronx.

23. Until his relatively recent separation, the Plaintiff resided with his wife and children at 139 Heather Circle, Newburgh, New York 12550, the County of Orange. At present the Plaintiff resides at 1020 Grand Concourse, Apt. # 5R, Bronx, New York.

24.   The Plaintiff has been married to his wife, Linda, for twenty years. The Plaintiff's wife has an Associate's Degree in nursing which she received from Bronx Community College.  The Plaintiff's wife is employed as a Registered Nurse at the Jacobi Hospital and Medical Center in the Bronx.  She has been employed threat for approximately fourteen years.

25.   The Plaintiff and his wife have four children, all boys, ages 7, 12, 16, and 17 years of age.

26.   Although the Plaintiff and his wife have separated, they maintain a positive, amicable and productive relationship and the Plaintiff remains actively and fully engaged with his children.

27.   The Plaintiff possesses a Bachelor of Arts in Social Science from the State University of New York at Stony Brook.  The Plaintiff graduated in December, 1983.

28.   The Plaintiff was employed at the New York City

7

Department of Homeless Services' LaGuardia Camp facility in Chester, New York, County of Orange until that facility was closed by the City of New York.

29. The Plaintiff was hired by the New York City Department of Homeless service as a Special Officer, with the equivalent authority of a New York State authorized peace officer, in the security force or Police Department of the New York City Department of Homeless Services on November 15, 1999. As noted he was assigned to the Camp LaGuardia facility.

30. The Plaintiff was first employed at the LaGuardia Camp facility in the title of Special Officer with the authority of a New York State authorized Peace Officer.

31. Prior to his employment by the New York City Department of Homeless Services as a Special Officer in the security force/Police Department of the Department of Homeless Services, the Plaintiff had a background in law enforcement.

32. Before being employed by the New York City Department of Homeless Service Camp LaGuardia facility as a Special Officer with the equivalent authority of a Peace Officer, the Plaintiff worked in the Orange County Sheriff's Office and supervised individuals confined in the Orange County jail.

33. Furthermore, the Plaintiff worked as a New York City Police Officer from February 1987 through October, 1995.

34. Moreover and prior to being employed by the New York City Department of Homeless Services, the Plaintiff had worked with a

8

disadvantaged and/or homeless population in capacities other than as a law enforcement officer.

35. From December 1985 through February, 1987, the Plaintiff worked as a Recreation Director for the New York City Human Resource Administration.

36. From January, 1996 through September, 1998, the Plaintiff worked as a caseworker for the New York City Department of Homeless Services at the Camp LaGuardia facility in Chester, New York, Orange County.

37. In other words and at the time of the Plaintiff's employment as a Special Officer in the security force at the New York City Department of Homeless Services Camp LaGuardia facility, the Plaintiff had a varied experience working with the disadvantaged and/or the homeless population [both supervisory and otherwise] and otherwise in law enforcement.

38. He was eminently qualified for a supervisory position in the police operations unit at the LaGuardia Camp facility, perhaps the most qualified among the Special Officers and more qualified than two individuals, both white, who were eventually promoted to the supervisory position of Senior Special Officer [with rank of Sergeant] over the Plaintiff when the Plaintiff sought promotions on two separate occasions after his initial hiring as a Special Officer at the Camp LaGuardia facility.

39. In fact, Defendant Garcia had been heard to say prior to the afore-described promotions situation, that the Plaintiff was

one of his "best officers" at the Camp LaGuardia facility.

40.   The Camp LaGuardia facility closed on or about August 15, 2007.

41.   At the time of its closure, the Plaintiff was transferred to New York City and assigned to the Path Family Shelter in the Bronx, New York. That transfer was directed by Defendants Gagliardi, Garcia, and Panazzolo with the approval and imprimatur of Defendant Hess.  The Plaintiff was the only Camp LaGuardia Special Officer transferred to the Bronx, New York Path Family Shelter.  It is believed that all other transferred Camp LaGuardia Officers were transferred to the Charles Gay Building of the Wards Island Men's Shelter.  By his transfer to the Bronx, New York Path Family Shelter and unlike the other Camp LaGuardia Officers, the Plaintiff was isolated from those with whom he had previously worked, something which, it is believed, the Defendants consciously and intentionally did to the Plaintiff as part and parcel of their discriminatory and retaliatory pattern and practice of action and conduct directed toward the Plaintiff.

42.   Approximately three and one half years after his initial employment by the New York City Department of Homeless Services and his assignment to the Camp LaGuardia facility in Orange County in November, 1999 and prior to Camp LaGuardia's closure in August, 2007 and the Plaintiff's transfer to New York City, the Plaintiff filed a Complaint with the Equal Employment Opportunity Commission on or about May 29, 2003 alleging that he was discriminated in the

terms and conditions of his employment, because of his race.

43.  The Plaintiff alleged, in sum and substance, that he was discriminated against on two separate occasions when he sought and was denied promotion from Special Officer, with the equivalent authority of a Peace Officer, to the position of Senior Special Officer, with the rank of Sergeant and the authority of a Peace Officer, in favor of two lesser qualified white individuals.

44.  The attainment of the Senior Special Officer, with the rank of Sergeant and the authority of a Peace Officer, position and title was a necessary step in the promotion chain, in order to ultimately, achieve the ranks of Lieutenant and Captain within the structure of the security force of the New York City Department of Homeless Services.

45.  The Plaintiff claimed that white individuals were favored individuals in the promotional selection process for supervisory positions in the security force at the Camp LaGuardia facility and that lesser qualified white and/or Latino individuals than was the Plaintiff were populating the supervisory positions in all levels at the facility to the disadvantage of African American individuals and specifically, in the context of the circumstances of his Complaint, the Plaintiff.

46.  On June 25, 2003, the Plaintiff, filed a lawsuit in the United States District Court for the Southern District of New York against Defendants Gagliardi, Garcia, and Panazzolo, and then the Commissioner of the New York City Department of Homeless Services

Linda Gibbs, seeking relief from the discriminatory conduct
described in the Plaintiff's May 23, 2003 EEOC Complaint. On
August 21, 2003 the Plaintiff filed an Amended Complaint adding a
claim under Title VII of the Civil Rights Act of 1964 as amended,
42 U.S.C. Sections 2001, et seq., the Plaintiff have acquired a
Notice of Right to Sue letter from the EEOC to which he had
initially gone seeking relief based on the allegations asserted in
his May 28, 2003 EEOC Complaint. See: Julius Williams v. The City
of New York, etc., et al./03 Civ 4648 (SCR)/SDNY (WP).

47.   The Plaintiff alleged that Defendants City of New York
and Gagliardi, Garcia, and Panazzolo were responsible for the
discriminatory conduct practiced against the Plaintiff as part of
an overall policy, practice and custom which favored white
Officers and discriminated against African Americans, among them,
the Plaintiff specifically, in promotions of individuals from the
title of Special Officer to supervisory positions of Senior
Special Officer, with equivalent rank of Sergeant, Lieutenant, and
Captain, at the Camp LaGuardia New York City Department of
Homeless Services facility in Orange County, New York.

48.   The Plaintiff further alleged in his 2003 lawsuit that
such policy, practice and custom and the actions taken pursuant
thereto were undertaken and implemented with the imprimatur of
Defendant Hess's predecessor at the time, Linda Gibbs, then the
Commissioner of the New York City Department of Homeless Services.

49.   A copy of the Plaintiff's First Amended Complaint in the

2003 lawsuit is attached hereto and made part hereof.

50.   After some initial discovery in the afore-described litigation, the Plaintiff and the Defendants therein entered into a settlement agreement at the end of April, 2004. A copy of the Stipulation and Settlement of Discontinuance is attached hereto and made part hereof.

51.   The Plaintiff received a monetary settlement representing the difference in salary between that which he was making as a line Special Officer in his position as a member of the Police Department and security force at the Camp LaGuardia homeless services facility maintained and operated by the City of New York in Orange County and that which he would have received in the first step supervisory position of Senior Special Officer [with rank of Sergeant].

52.   While the Plaintiff did not, at that immediate point in time secure a promotion to the supervisory position of Senior Officer [with rank of Sergeant], the Plaintiff was, as part of the non recorded settlement, informed and given assurances, as a consequence of extensive give and take between the Plaintiff's attorney and the Defendants' attorneys, that, when an anticipated position of Senior Special Officer be available in the relative near future after the settlement, the Plaintiff would be given very serious consideration for the position and for selection into the position without any guarantee at the time of the settlement, however, that the Plaintiff would receive the position.

53.   In substance and as part of the settlement and although such was not written into the settlement document itself, assurance was given that the Plaintiff would, in fact and all factors considered, in all likelihood be selected for an anticipated future promotion to Senior Special officer [with rank of Sergeant].

54.   In fact, on March 14, 2005, less than a year after the settlement of the 2003 litigation at the end of April, 2004, the Plaintiff was promoted to the supervisory position of Senior Special Officer [with rank of Sergeant].

55.   The Plaintiff functioned in the supervisory position of Senior Officer [with rank of Sergeant] from March 14, 2005 until August 15, 2007 when the Camp LaGuardia facility was closed and the Plaintiff, and only the Plaintiff among the Camp LaGuardia Officers, was transferred to the Path Family Shelter in the Bronx, New York while all of the other Camp LaGuardia Officers were transferred to the Charles Gay Building in the Wards Island Men's Shelter complex.

56. During the period from March 14, 2005 until August 15, 2007, the Plaintiff performed his duties and functions as a supervisory Senior Special Officer [with rank of Sergeant] in an outstanding manner and fashion and without any incidents or problems of any consequence whatsoever.

57.   Thereafter on or about February 6, 2008, within a year after being transferred to the afore-described New York City

Department of Homeless Services Path Family Shelter, the Plaintiff was promoted to the position of Lieutenant.

58.   The promotion was made by Defendants Gagliardi, Panazzolo, and Garcia under and with the imprimatur of Defendant Hess.

59.   At or about the time that the Plaintiff was promoted to the rank of Lieutenant the Plaintiff was transferred to the Bedford and Atlantic Men's Shelter in Brooklyn, New York where he was placed under the direct supervision of one Captain Wallace Butler.

60.   The promotion was made because, under such and per his assignment at the Bedford and Atlantic Men's Shelter in Brooklyn, New York, the Plaintiff would, then, be under the direct supervision of one Captain Wallace Butler unlike the situation if the Plaintiff had remained as a Senior Special Officer [with rank of Sergeant] when he, then, would have been under the direct supervision of a Lieutenant.

61.   Captain Wallace Butler was known, throughout the security force of the New York City Department of Homeless Services, to be an abusive supervisor and manager and he held a reputation in that regard throughout the New York City Department of Homeless Services security force/Police Department.

62.   Defendants Gagliardi, Garcia, Panazzolo, and Hess knew and were aware of Captain Butler's reputation as an abusive, unprofessional supervisor and one who ruled his subordinate

officers through intimidation and through the filing of unjustified disciplinary reports and/or the rendering of unjustified unsatisfactory evaluations of his subordinate officers; and it was their intent to place the Plaintiff in that atmosphere and situation in order to retaliate against the Plaintiff for what they believed to be the allegations that the Plaintiff previously made against them in his prior lawsuit.

63.   In that respect, in the past when the Plaintiff spoke to Defendant Gagliardi after the Plaintiff made his initial complaint against Defendant Gagliardi about Defendant Gagliardi's racial discrimination at the Orange County New York City homeless shelter facility, Defendant Gagliardi stated to the Plaintiff that the Plaintiff had "embarrassed us and now I have people thinking that I am racist".

64.   Captain Wallace Butler's "rule" over his subordinate supervisors was summed up in his own words: "If you don't like what the f--- is going on here you can go work at McDonalds".

65.   Working under Captain Wallace Butler was a "living hell" for the Plaintiff.

66.   The Defendants knew and were aware and/or, but for reckless disregard of their own duties and functions, should have been aware that Captain Butler was prone to making unjustified disciplinary reports and complaints about the conduct of his subordinates under his command and to producing and making unjustified unsatisfactory evaluations of the subordinates under

16

his command.

67. Once the Plaintiff was placed in his position of Lieutenant under the direct supervisory of Captain Butler, the Plaintiff was subjected to unprofessional and abusive treatment by Captain Butler.

68. The Plaintiff was given constant unsatisfactory evaluations and was regularly written up for meritless infractions.

69. Rather than simply accepting such as often was the pattern of subordinate supervisors under the command of Captain Butler, the Plaintiff filed a formal complaint against Captain Butler and otherwise respectfully defended himself from unprofessional and abusive conduct directed toward the Plaintiff by Captain Butler, often times in the presence of others [such being designed to control the Plaintiff and others and to intimidate the Plaintiff and others].

70. As had been the case at Camp LaGuardia when the Plaintiff observed unprofessional and inappropriate conduct by his colleagues in the security force, the Plaintiff would not, by silence, acquiescence in such conduct but would, always respectfully, address such with the individual and/or with appropriate supervisors to whom the offending individual was accountable.

71. In fact as because of what he deemed to be inappropriate and discriminatory conduct by the Defendants in this action, the

Plaintiff, when he believed that he had been the subject of inappropriate and discriminatory conduct by the Defendants when he and they were at Camp LaGuardia, filed a complaint with the EEOC challenging the conduct and, ultimately, filed a complaint in this Court seeking relief from conduct the Plaintiff deemed to be inappropriate and unlawful.

72.  Among other conduct directed by Captain Butler toward the Plaintiff were the filing of unfounded disciplinary reports/complaints by Captain Butler about the Plaintiff's conduct and, in addition, the filing of unsupported and unsupportable unsatisfactory evaluations of the Plaintiff in the performance of the Plaintiff's duties and functions as a supervisor under the authority and command of Captain Butler.

73.  When the Plaintiff wrote up Captain Butler for his inappropriate and abusive conduct, the Defendants, even though they knew or should have known of Captain Butler's pattern of abusive and unprofessional conduct and his rendering of unjustified unsatisfactory performance evaluations of individuals under his command with whom he had personal issues, did nothing to address Captain Butler's unprofessional conduct even though the Plaintiff's complaint was deemed to have merit.

74.  The Defendants knew that, if the Plaintiff could not tolerate the hostile work environment in which they had placed him as a Lieutenant, such would make it easier for them to retaliate against the Plaintiff and otherwise to treat him in a

discriminatory manner and fashion in order to redress their own individual and collective angst and grievances and hostility toward the Plaintiff arising out of the fact that the Plaintiff had previously complained about the Defendants and their discriminatory conduct toward African Americans and toward him specifically, and had filed an EEOC Complaint and a federal Court lawsuit against them relative thereto, and had obtained and secured redress and vindication for their pattern and practice of racially discriminatory conduct as described.

75.   Accordingly and notwithstanding that there was no meritorious evidence to justify the impositions of any sanctions against the Plaintiff based on any disciplinary reports filed by Captain Butler against the Plaintiff and/or based on any unfounded, unjustified unsatisfactory performance evaluations of the Plaintiff by his then supervisor Captain Butler and even though the Defendants knew or should have known such absent a conscious avoidance and reckless disregard of the lack of merit to any disciplinary reports and poor evaluations of the Plaintiff, on or about January 9, 2009  the Defendants Gagliardi, Garcia, and Panazzolo, individually and acting in concert with each other and under the imprimatur of Defendant Hess, demoted the Plaintiff not only from the position of Lieutenant to Senior Special Officer [with rank of Sergeant] but, as well, from Senior Special officer [with rank of Sergeant] to Special Officer, the lowest ranking title in the chain of command within the New York City Department

of Homeless Services security force/Police Department.

76. With such, the Plaintiff lost substantial economic benefits in the form of salary and, of course and as well, the loss of esteem, status, and duties, functions and responsibilities that were attached to and were associated with his positions as Senior Special Officer [with rank of Sergeant] and Lieutenant, respectively.

77. In other words, nine years after commencing his employment as a Special Officer in the New York City Department of Homeless Services at the New York City Department of Homeless Services Camp LaGuardia facility and notwithstanding that the Plaintiff had consistently performed his duties and functions above average in the line and supervisory titles he held, the Plaintiff found himself back in the same position this notwithstanding that he had performed his duties and functions in an outstanding manner and fashion over the course of that period of time including during the period of time when he was functioning as a Senior Special Officer [with rank of Sergeant] and as a Lieutenant, each of which supervisory positions the Plaintiff was compelled to fight for [as described above] over the objections of the Defendants Garcia, Gagliardi and Panazzolo, the latter of which caused said Defendants to look for anything to push the Plaintiff back to the position from which he started.

78. The demotion sanctions imposed by the Defendants against the Plaintiff were grossly disproportionate to anything that the

offense[s], if they had even had occurred, would have justified
yet a lone would justify since the offense[s] was/were unjustified
and lacking any merit as were the less than satisfactory
performance evaluations which Captain Butler gave to the Plaintiff
[contrary to all of the satisfactory and better performances that
the Plaintiff had received over the course of his career to that
point in time when Butler rendered the unjustified unsatisfactory
evaluations].

79.   The demotion sanctions imposed upon the Plaintiff by the
Defendants were racially discriminatory and unequal when measured
against sanctions imposed upon white and/or Hispanic individuals
whose alleged offenses were both more meritorious in substance and
evidentially supportable than were the offenses alleged to have
been committed by the Plaintiff [which were alleged offenses
without any merit and with no or little evidence to support such]
and which offenses, themselves, by the white and/or Hispanic
individuals were far more egregious than the merit lacking
offense[s]/disciplinary breaches which the Plaintiff was alleged
to have committed.

80.   Thus and as for an example, a Senior Special Officer
[with rank of Sergeant] who is an individual of Hispanic national
origin, was caught on Department grounds, while off duty and while
under the influence of alcohol, giving lap dances and engaging in
illicit sex with two other employees.  The individual, a female,
received little or no punishment even though the charge was

substantiated after investigation.   Not only did the individual receive little or no sanction and certainly not a demotion, the individual was eventually promoted to the rank of Lieutenant. It is believed that her promotion was advanced by Defendant Panazzolo with whom the female had a special relationship.

81.   As for another example, a male Hispanic was promoted from Senior Special Officer to the position of Lieutenant even though he was not qualified for the promotion into the position because he had failed both the Special Officer and Senior Special Officer examinations. Moreover and in addition thereto, the individual possessed a disciplinary record and consistent poor performance evaluations in his position and rank as a Lieutenant. Nonetheless, this individual was never  sanctioned and, more specifically, never suffered any demotion yet along a demotion back to the lowest Special Officer title within the overall chain of command and structure even though and unlike the Plaintiff's record and evaluations, his disciplinary record and evaluations were far more problematic and evidentially supported and supportable than was the Plaintiff's record.   Rather than a demotion, the Hispanic male remains in his position as a Lieutenant.

82.   Another male Hispanic officer, who held the rank of Captain, has been disciplined numerous times and even temporarily transferred to work at Camp LaGuardia when that facility was open and operating. While he did suffer a temporary demotion to Senior Special Officer [with rank of Sergeant] from his position as a

Captain, unlike the Plaintiff, he suffered no loss of income associated with the demotion but continued to receive a salary commensurate with the position of Captain from which he was temporarily demoted to Senior Special Officer [with rank of Sergeant].

83.  Still yet as another example, a white Hispanic male who held the supervisory rank and title of Lieutenant, was regularly abusive and threatening to and  sexually harassing of subordinates in the command structure. An investigation of his abusive and threatening conduct was undertaken and substantiated.   The white Hispanic individual was never demoted or otherwise disciplined. In fact, when the white Hispanic individual held the position of Senior Special Officer [with rank of Sergeant] and before he was promoted, this white Hispanic male individual started a fire to alert another officer who was sleeping/lounging on his post, totally disregarding the safety and lives of every other individual then in the building.  While the incident was investigated and substantiated and while the sexual harassment complaint against him was investigated and substantiated, nonetheless, rather than being demoted, he was promoted.

84.  Still another Hispanic Senior Special Officer [with rank of Sergeant] was arrested for driving a vehicle with a suspended license.  Not only was he not demoted, no further investigation of his conduct was undertaken, his conduct was held the problematic conduct "in house", and he suffered no discipline whatsoever.

85.  Although the disciplinary report[s] by Captain Butler against the Plaintiff were found to be unsubstantiated and although the poor evaluations given by Captain Butler to the Plaintiff lacked any merit and were totally inconsistent with the exemplary evaluations the Plaintiff had received over a substantial career within the New York City Department of Homeless Services security force/Police Department, the Plaintiff, unlike the afore-described individuals, received disproportionately harsher and clearly unequal treatment from and by the Defendants.

86.  It is believed that, until the Plaintiff complained to the Defendant Garcia about the abuse which Captain Butler was directing at persons within the workforce under Captain Butler's jurisdiction, Captain Butler had reported to the Defendant Garcia that the Plaintiff was very smart and, in substance, performing his duties and functions satisfactorily if not better.

87.  After the Plaintiff complained about Captain Butler's abuse as described, the Plaintiff went from "smart" and a satisfactory job performing individual to less than smart and less than satisfactory in the performance of his duties and functions.

88.  It is believed that the Plaintiff is the first and only individual to be demoted from Lieutenant to Special Officer in the history of the Department of Homeless Services Police Department.

89.  It is believed that, in the context of the situation which lead to the Plaintiff's racially discriminatory and retaliatory demotion, an investigator within the Department of

24

Homeless Services expressed the view that the Plaintiff was not liked by the management of the Department of Homeless services and that the management was, in substance, "watching" the Plaintiff and was "out to get the Plaintiff".

90.   The irony of it all and the racially discriminatory and retaliatory nature of the treatment which the Plaintiff received from the Defendants are highlighted by the fact that, in addition to the afore-described Latinos whose treatment was far less drastic than the treatment received by the Plaintiff, Captain Butler himself was never disciplined by the Defendants notwithstanding that he has been the subject of numerous complaints about his abusive and unprofessional conduct and notwithstanding that the Plaintiff's complaint against Captain Butler for abusive and unprofessional conduct was investigated and found to be meritorious.

91.   To the contrary and in order to cover themselves for their otherwise racially discriminatory and retaliatory treatment of the Plaintiff, on or about October 3, 2009, the Defendants promoted Captain Butler to the position of Deputy Inspector.

92.   Prior thereto and subsequent to the Plaintiff's filing of his race discrimination in employment and retaliation in employment Complaint with the EEOC and again in order  to make it appear that the Defendants were not engaged in a pattern and practice of discrimination in employment toward African Americans, two African Americans, one a female [Lieutenant Hodge to Chief]

and the other a male [Captain Howard to Inspector] were promoted
to the otherwise previously all white highest levels of the Police
Department of the Department of Homeless Services.

93.   Even while the Defendants were doing the foregoing as a
means to cover their otherwise racially discriminatory policies
and practices and racially discriminatory and retaliatory conduct
directed toward the Plaintiff, the Plaintiff, in or about
September, 2009, interviewed for the posted position of Lieutenant
in the Department of Homeless Services' Police Department, in
which he had previously functioned satisfactorily and better and
from which he had previously been unjustly, discriminatorily and
retaliatorily demoted.

94.   The Plaintiff was interviewed for the position and among
others on the interview panel was then Captain Butler.

95.   The Plaintiff was denied the promotion to the posted
position of Lieutenant.  The person, who received the position of
Lieutenant, for which the Plaintiff sought promotion,  was, it is
believed, less qualified by experience and background than the
Plaintiff who, as previously described, previously held the
position of Lieutenant and performed satisfactorily and better in
the position before he was unjustly, discriminatorily, and
retaliatorily demoted from his position as a Lieutenant.

96.   It is believed that the refusal to promote the Plaintiff
to the posted position of Lieutenant, for which he applied and was
interviewed in September, 2009, was part and parcel of a

continuing course of the retaliatory conduct by the Defendants against and toward the Plaintiff.

97.  It is believed that some or all of the afore mentioned actions and conduct reflect a pattern and practice and custom of racial discrimination in the employment of African Americans in the police operations unit at the New York City Department of Homeless Services security force/Police Department [where white and white Hispanic individuals received much more favorable treatment in the terms and conditions of their employment while the Plaintiff and other African American individuals receive much less favorable treatment in the terms and conditions of their employment].

98.  It is believed, moreover, that some or all of the afore-described actions and conduct describe retaliatory conduct by Defendants Gagliardi, Garcia, and Panazzolo, with the imprimatur of Defendant Hess, against the Plaintiff because of the Plaintiff's previously filed and successfully resolved litigation against said Defendant Gagliardi, Garcia, and Panazzolo.

99.  As a consequence of the actions and conduct, the Plaintiff has suffered loss of benefits and pay associated with the afore-described discriminatory and/or retaliatory disciplinary demotions.

100.  Furthermore, the Plaintiff has suffered mental distress, emotional anguish, and psychological trauma.  He is suffering from sleeplessness and depression.  His dignity has been assaulted and

his self respect denigrated. These conditions are continuing conditions.

FIRST CAUSE OF ACTION

101.  The Plaintiff reiterates Paragraph #'s 1 through 100 and incorporates such by reference herein.

102.  The Plaintiff was discriminated against, because of his race, when the Plaintiff was demoted as described by the Defendants' conduct, actions, and policies, practices, and customs in violation of his rights as guaranteed under the Civil Rights Acts of 1866, 42 U.S.C. Sections 1981 and 1983, the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000[e] et seq., and the Thirteenth and Fourteenth Amendments to the United States Constitution.

103.  The Plaintiff suffered injuries and damages.

SECOND CAUSE OF ACTION

104.  The Plaintiff reiterates Paragraph #'s 1 through 103 and incorporates such by reference herein.

105.  The Plaintiff was discriminated against, because of his race, when the Plaintiff was demoted as described by the Defendants actions, conduct, and policies and practices and customs in violation of State law including the Defendants' own diversity and affirmative action and anti discrimination policies and practices and including the Human Rights Law of the State of New York and the Human Rights Law of the City of New York.

106.  The Plaintiff suffered injuries and damages.

THIRD CAUSE OF ACTION

107.   The Plaintiff reiterates Paragraph #'s 1 through 106 and incorporates such by reference herein.

108.   The Plaintiff was subjected to retaliation by the Defendants in violation of his rights under the Civil Rights Act of 1871, 42 U.S.C. Section 1983, in conjunction with the Fourteenth Amendment to the United States Constitution; and in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. Sections 2000 et seq.

109.   The Plaintiff suffered injuries and damages.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and thereafter:

        a. Invoke pendent claim and pendent party supplemental jurisdiction.

        b. Award appropriate equitable relief.

        c. Award compensatory and punitive damages.

        d. Award such other and further relief as the Court deems is appropriate and just.

        e. Award reasonable attorney's fees.

        f. Empanel a jury to consider the merits of the claims.

DATED: New York, New York
       October 27, 2009

                          Respectfully submitted,

                          /s/James I. Meyerson_____
                          JAMES I. MEYERSON
                          64 Fulton Street @ Suite # 502
                          New York, New York 10038
                          [212] 226-3310
                          [212] 513-1006/FAX
                          jimeyerson@yahoo.com

                          ATTORNEY FOR PLAINTIFF
                          BY:_____